The United States v. Taylor. Mr. Newton. Good morning. Mr. Newton, nice to have you here. Thank you. We know your court. We honor that. Go right ahead, sir. Thank you. May it please the court. There are many issues and many sub-issues in this case, so in my limited time I intend to address the, initially at least, the issues that most broadly affect the three convictions, the due process perjury claim and the ineffective assistance of counsel claim related to the conduct of counsel during trial as opposed to related to insufficient evidence issues. After I initially address those issues, if I have time left, I will turn to some of the Before I turn to the merits of that claim, though, I want to briefly address the government's erroneous argument that this claim was waived by not having been raised on direct appeal. The claim could not have been raised on direct appeal. The critical evidence in the case that the FBI 302 documents concerning officers Hendricks and Ward, the pretrial statements they made to the trial prosecutors, co-defendant Wayne Jenkins's plea agreement, and an excerpt from a 2023 book by lead prosecutor Leo Wise, none of that was part of the record on direct appeal. In addition, the record did not contain testimony from the trial prosecutors. Obviously, that's very important with respect to this claim, and that hasn't happened, of course, because the district court denied my request for an evidentiary hearing. Well, weren't the the two witnesses, Ward and the other one, they were cross-examined on those statements, weren't they? They were cross-examined about very narrow aspects of those statements. Trial counsel, and this is also related to my ineffective assistance of counsel claim, trial counsel failed to walk them through the most important, flatly contradictory part of pretrial statements to the trial counsel. Well, here's a question. So, in an attempt to get a lesser sentence, you talked about Detective Taylor called out on the radio that somebody was running from the back of the house. That was the hoax that we came up with. So, when you told him they weren't able to catch the person, that was just a lie, correct? And then they go on to a little bit further, and they again say that was part of the lie, too. Yes. What is it exactly that you say was missing here? So, this is what should have happened. Trial counsel should have gone over with both Ward and Hendricks. They should have said, okay, so in your pretrial statement, you said the following. There really was a chase. Multiple officers, not just Lieutenant, not just Detective Taylor. Right. Ward's just said under oath, yeah, I lied about all that. I'm at a loss to understand what it is you're trying to get at. No, what he said he lied about was lying to the neighbor that this had happened, that this was a hoax, this was a ruse. What did not happen was a very... No, he's asked specifically. When you told them they weren't able to catch the person, that was just a lie and not actually true. Correct. And so, you told them that Detective Taylor was not sure if the person came out of the house. That was part of the lie, too. Yes. I mean, he's already been impeached. Tell me what it is that you say would have been different. The trial counsel should have gone word by word with both Hendricks and Ward with respect to what they said to the office, to the prosecutors before trial, among other things, saying that Detective Moore had seen a person trying to break into the house, which is why they felt the need. There were exigent circumstances to get into the house. There was absolutely no indication in the pretrial statements that this was a fictitious person who was running. They were creating this to make the neighbor believe they had exigent circumstances. In their pretrial statements, they were... Sorry, can you just help me understand? I thought this was a due process issue, but now we're hearing what counsel should have done. I literally just want to make sure I understand. Are we talking about an ineffective assistance of counsel claim right now, or are we talking about a due process, knowingly presenting perjured testimony claim right now? Both. So, the Supreme Court in Glasgow said in 2025 that it does not matter whether or not a defense lawyer should have used this stuff at trial effectively. That's irrelevant. The burden is on the prosecutor. That's said at Glossip at 604 U.S. at 252. So, it relates both to my ineffective assistance of counsel claim that they failed, the trial counsel failed to go at these two critically important, most important witnesses for the prosecution about their flatly contrary statements to the trial prosecutors before trial and their statements at trial that this was all a hoax or a ruse. But can I take those one at a time because it came up during your response to Judge Agee. So, to the extent the argument is that defense counsel should have asked more questions, could you respond to Judge Agee's point of like... And Judge Agee's like, you've already impeached them, and you say, but you should go line by line. And then I start to go, this does not sound like Strickland prong one. When we're asking whether defense counsel should have asked, should have either just taken the admission that they're lying liars, or whether we should have gone over in loving detail all the ways in which they're lying liars, strikes me as a classic Strickland prong one. It's almost impossible to say that there was deficient performance because that's a tactical judgment at which different lawyers can reach different conclusions. So, well, I guess I'd invite you to respond to that. And then, yeah. So, could you respond to that? I'm very skeptical of how that could be deficient performance under Strickland one. Well, here's the problem, and the district court engaged in this problem, or committed this error. We never heard from the trial prosecutors because I never got my requested evidentiary hearing. We don't know what judgments they made or didn't make. Maybe they did not read those pretrial statements carefully enough. Who knows? We just don't know. And you have to look at the record and write most favorable to Mr. Taylor. You've got to also... What difference does any of that make? If the jury believed, and it's not just, by the way, the limited questioning, there's more to it. So, in Leo Wise's 2023 book, which is part of the record, he said that the son of Maurice was nobody on this property. It was a fictitious person. They also, in Ward's testimony, he specifically said, Detective Moore, this is in his pretrial statement, Detective Moore saw somebody trying to break into the house. No one talked about that at trial. That's completely contrary to their version at trial, which was, this was completely a hoax. We didn't have any reason to break into the house. We just wanted to do a sneak and peek and see what was in Maurice Stevenson's house, and the neighbor was watching us, and we didn't want the neighbor to later tell somebody that they broke into the house, so they had to invent a hoax or a ruse. Another example of something trial counsel didn't get into. Ward said, not only did Taylor run after, this is in his pretrial statement, this real male, this non-fictitious male, the son of Maurice Stevenson, according to Wise's book, didn't run after him by himself. He was joined, oh I'm sorry, this was, this was, it was Ward, joined by Hendrickson, Ward trying to run after the male. So it wasn't just Taylor who supposedly engaged in this hoax. It really wasn't a hoax. All three of those officers ran after him. So there is a significant version of events told to the, to the prosecutors before trial, compared to the version that was given at trial. And so what's the, if you've adequately answered Judge Hyten's first question, you know, we want our, our counsel, particularly court appointed, to be zealous advocates, but when you accuse the prosecutor of suborning perjury, that's pretty serious, and that's basically what you've said in your brief. Your honor? What's the proof that they're suborning a perjury here? The government at trial took the firm position in their closing argument, and in their questioning of the witnesses, that there was never anybody on the property. This was a hundred percent a ruse, a hundred percent a hoax. It was completely made up for the purpose of creating exigent circumstances. That was argued by the prosecutor in closing arguments. It wasn't just the witness saying it and the prosecutor just let it go. They embraced it at trial. In Kiles v. Whitley, the Supreme Court at 514 U.S. at 443, dealt with a somewhat similar situation, where there was pretrial statements that were flatly inconsistent with the trial testimony. And the Supreme Court said these developments would have fueled a withering cross-examination, destroying confidence in the witness's testimony, and raising a substantial implication that the prosecutor had coached him to give it. So you have to look at the evidence in a light most favorable to the appellant, because we didn't get a hearing. So that means looking at the allegations in the 2255 motion, as well as these things such as the pretrial statements, looking at it in a light most favorable, I'm entitled to a hearing. The judge should hear from the prosecutors. The judge should hear why these stories change so significantly. We view that for abuse of discretion? Well, the case law occasionally says abuse of discretion, but when there is a genuine issue of material fact that the district court was presented with, when viewing the evidence in a light most favorable to the movant, it is de novo in terms of deciding whether there should have been a hearing or not. That's just, that's black-letter law about summary judgment. I will now turn to the ineffectiveness claim. Oh, let me quickly say, the standard for prejudice, I'm sorry, the standard for materiality, the Supreme Court in Glossop made it very clear in 2225, in 2025, that the government has the burden to prove beyond a reasonable doubt that the perjured testimony did not contribute to the verdict. It doesn't even have to be something that directly supported the verdict. The Supreme Court was very clear in Glossop that the verdict incredibly difficult standard the government faces with respect to proving that the testimony did not contribute in any way to the verdict. These two witnesses were very important witnesses. I also should add regarding another officer, Officer Ram, a part of my ineffectiveness claim should also be relevant here because it also could potentially be false testimony. That was my expert witness who went through the purported transcript of what was supposedly said in an undercover recording, and she said what the officer claimed at trial in leading questions based upon a transcript prepared by the government was never said. We don't know because we didn't get a hearing about what the actual truth is. Trial counsel basically made that argument, and the jury heard it. No, trial counsel said it was indecipherable. Trial counsel did not say that it was the opposite of what was in the transcript. But the jury heard it, and they could make their own decision on what they thought it meant. Your Honor, without an expert witness to enhance the recording, the jury could not have made any sense of it. That's why I got an expert. That's what trial counsel should have done. That would have also called into question the integrity of the prosecution because according to my expert, and you've got to believe her. Yes, the defense lawyer. You're coming before us and purporting to be an expert in all this stuff, and you weren't even there. Your Honor, I'm not purporting to be an expert. I'm pointing out to my expert's report. You're undertaking to testify before us about all this that you were not involved in. You got in this thing last year. Your Honor, I'm not trying to testify. Your Honor, I'm not trying to testify. I'm simply pointing to what my expert said, looking at the evidence in a light most favorable to appellant, which is the required standard of review. What the jury heard was indecipherable, which is why the prosecutor created a transcript. I have an expert who's never had a chance to testify who says that's not what was said. Sorry, could I go to your ... You were trying to move to your ineffective assistance of counsel arguments, and I have one sort of question. These are about ineffective assistance of appellate counsel. What is your best case where a court has found that appellate counsel who actually filed an appeal was ineffective on appeal? Virtually all, if not all, of the cases I've seen where appellate counsel was held ineffective, were cases where appellate counsel literally didn't file an appeal. There are cases out there where there have at least been remands for- Okay, what's your best one? There's a Seventh Circuit decision, let me see if I can find it, in which the court discusses the standard. The best case is obviously Smith versus Robbins. The Supreme Court said that if you have a case where stronger issues are omitted, and there's a reasonable probability those issues would have prevailed, that is a showing of ineffective assistance. Applying the Strickland standard- Let me ask you that. Appellate counsel raised nine issues on appeal. Are you saying they raised more than nine issues, or are you saying they should have cut some of the issues they've raised to add the issues you now claim they should have made? The latter. They should have cut virtually all of them. How is that, again, not core Strickland prong one? Deciding which issues to keep, and which issues to lose, and which ones you think have a better chance, and which ones you don't. This feels like core Strickland prong one. Well, your honor, Strickland requires deference to lawyers, no question about it, in their strategic decisions, but it's not blind deference. This is an objective standard, and when there are issues based upon the existing legal landscape that are stronger than the issues that were raised, and those issues have a reasonable probability, had they been addressed in a normal direct appeal, then that is an effectiveness under the Smith versus Robbins test. So, I want to talk briefly- Oh, I've run over. I'll reserve the remaining time for rebuttal. Thank you very much, Mr. Boone. Ms. Boudin? Yes, Judge King, good morning, and may it please the court, N.J. Kirsch Munoz for the United States. A jury found Marcus Taylor guilty of racketeering and robbery after he and his gang of corrupt police officers violated the trust of the citizens they swore to serve in almost countless ways. Eight years, and at least four courts later, he stands here offering a host of insufficiency arguments, claiming that no rational juror, not a single one, could have convicted him on the evidence presented. These arguments are procedurally defaulted, but worse than that, they are impossible to swallow on the merits. The government respectfully asks that this court affirm the jury's well-founded guilty verdict. Unless your honors have a preference otherwise, I'd actually like to start with where Judge Heitens left off my colleague on the issue of procedural default, and I note that on appeal, Mr. Taylor has abandoned his claim of actual innocence, so his only hope for raising these belated insufficiency claims is his contention that appellate counsel rendered ineffective assistance. But Mr. Taylor cannot meet the ineffectiveness standard here, which sets a particularly high bar when the argument is that his appellate counsel, though having filed a merits brief raising nine different claims of error, was ineffective for having failed to raise the particular claims of error that he now wishes had been asserted. This just doesn't fly, absent of showing that the ignored issues are clearly stronger than those presented, and Mr. Taylor does not meet this standard. He barely even tries. He spends most of arguing that his claims are merely meritorious, but there's significant daylight between finding that claims are meritorious and finding them so much so clearly stronger that counsel's failure to raise them on direct appeal amounted to constitutional ineffectiveness. And so this is a very easy way for this court to reject the insufficiency claims, which as even Mr. Taylor admits, he did not make on direct appeal. And you know, there's no reason necessarily to get into the merits here. So can I ask you a question about something you say in your brief about harmless error that strikes me as wrong, and I'd like to give you a chance to tell me why it's not. So you argue that as long as we find sufficient evidence to support one of the convictions, any errors to the remaining two is harmless because they're the identical, you know the line from your brief, identical and concurrent sentences on the others. Identical and concurrent life sentences. Hasn't the Supreme Court and this one both said that's wrong because as long as each count has different special assessments, it's not harmless error to be like, oh, it turns out you shouldn't have been convicted on count one, but that's no big deal because you're going to be, you have life on count two, except count one also requires you to pay money. So doesn't that not not work? Your Honor, I am, I will not, you know, rest on the harmless error argument that was made in our brief. I do think, you know, especially at the stage that we are at now, it is, you know, part of the calculus at least to to note that. So is that a soft concession that what you said in your brief is just dead wrong because it's inconsistent with what the Supreme Court and this court have both said? I am reluctant to make any such concession. I will. Are you telling me that Ray v. United States, 481 U.S. 736-737 doesn't directly reject that argument? I have not read that case, Your Honor, and I apologize. I'm not sure if I can directly answer your question. I will just note again that I will not, you know, rest the government's arguments on harmless error in this case. You know, again, we believe that the insufficiency claims here are clearly procedurally defaulted and there's no reason to entertain the merits of them now. So can I ask you about the district court's law of the case holding, which strikes me as deeply dubious? So on the direct appeal, did anyone advise the panel that count three might not encompass the traffic stop robbery? Like, did anyone say that on direct appeal? I am not aware of whether anyone had said that, no. How can the panel have possibly decided an issue that no one raised before that panel? I, you know, I am not, I'm not sure whether it was raised. I honestly can't say. Well, let me represent to you that based on my research, no one did. So assuming that it was never raised before the panel, how could it possibly be law of the case on that issue? If it was not raised before the panel, I would say that it is not law of the case. However, I, you know, I think that it was within the jury's, you know, province to- No, I know, but the district court rejected it on law of the case grounds, which strikes me as wrong. And I'm asking you why it wasn't wrong for the district court to reject it on law of the case grounds. I think the district court did assume it was law of the case, but then went on and said, like, even if it wasn't law of the case, I would still find, you know, the convictions to stand based on the evidence of the robbery or the van robbery, I should say. And so I'm not sure that district court, you know, hung its hat entirely on the, you know, the peg of law of the case. So you're arguing now on that point that there's an alternative holding by the district court that's not dependent on law of the case? Your Honor, I believe that there was an alternative holding there. I believe that, yes, the district court initially said, yes, this is law of the case. You know, count three can rest on the van robbery because, you know, the Court of Appeals said so on direct appeal. But I believe that, unless I'm mistaken, and I don't think I am, but please tell me if I am, it goes on to say that even if it weren't law of the case, it would still find that the van robbery was sufficient on which to convict on count three. And, you know, the government believes that is So in your view then, on this particular point, we can just ignore that law of the case part and look only to the alternative holding? It's not a trick question. It's just trying to narrow this down. Yes, I think that you can look at that alternative holding and, you know, what's more, that alternative holding is correct. You know, the jury was entitled to find that the van robbery prostitutes Hobbs Act robbery for purposes of count three. You know, the evidence was more than sufficient that the money was taken from Stevenson's van within his presence by use of force or threat of force. And so that is classic Hobbs Act. But that's two dollars theft out of the state? I'm sorry, Judge King, I didn't hear that. I'm sorry also, but are you all, did you discuss with me the, you're talking about count numbers and things. I'm not familiar with that. But I know about the $200,000 theft from Stevenson's safe where they stole $100,000 of it and turned $100,000 into the evidence. Yes. Yes, I did. And so, yes, that is what was charged as part of count three, which is the Hobbs Act robbery count. And, of course, Mr. Taylor makes the argument that this reference to $200,000 necessarily means that the jury had to find, you know, a Hobbs Act robbery from the house robbery rather than the van robbery to convict on count three. And I, you know, the government's position is that that's not necessarily true. The reference to $200,000 is not as telling as Mr. Taylor seems to think it is. You know, there was $200,000 in the safe, but only $100,000 of that was actually stolen. You know, there was also a watch valued at $4,000. And then, of course, we have the $6,500 taken from the van. So the $200,000 reference in the indictment with respect to the Hobbs Act robbery is not nearly as telling as I think Mr. Taylor would have it. But certainly the house robbery equally suffices on which to have convicted Mr. Taylor of Hobbs Act robbery. So can I, so I thank you for the clarification about the district court's alternative holding, which I agree I'm now seeing. I pulled up the language and I've seen the district court's alternative holding, which just opens up another can of worms for me, though, because the district court's alternative holding is based on the fact that Ms. Holloway was robbed, which at that point raises the what does this indictment charge question, right? So could you address that? Like, so as I read the district court, yeah, I'm just looking. The district court says, were the court to reach the issue the Fourth Circuit did not address it, it would find that the robbery of the money from Mr. Stevenson's home also constitute a robbery of Ms. Holloway. And then you run right into your friend on the other side's argument that the indictment doesn't charge a robbery of Ms. Holloway. So could you address that? Sure, Your Honor. So, you know, Taylor's sufficiency challenge on this count is based on the premise that the jury could convict only if the house robbery, in this case, had Reese Stevenson as the victim. But that premise is false. You know, the Racketeering Act allegations in the indictment are agnostic as to the victim. And the district court's final jury instructions are also agnostic as to the victim. They did not require the jury to find Stevenson or any particular person was the victim of the house. So is it your view that that parenthetical under count eight is a caption? What do you think that parenthetical is? I think at, you know, worst, it's shorthand. It's, you know, mnemonic memory aid. This is the robbery of a Reese Stevenson's house. This is the robbery of a Reese Stevenson's van. But that's not what the parenthetical says. It says the robbery of AS. I understand who we know that is, but it doesn't say robbery of his van. Well, first of all, you can't rob a van, right? You can only rob a person. That's not how robbery works. That is correct, Your Honor. And I'm sorry that I misspoke. But you know that the captions just simply do not alter the substantive allegations of the count. I mean, if you what's your best authority for that proposition? Uh, we say a Ninth Circuit case in our brief at page 21 United States versus Lopez from again the Ninth Circuit 2021 case. So if we're jumping to the I have not found any case in this circuit to have held that. I did, however, in my pre-argument review, I found another case that supports the government's position here. That case is United States versus Ansaldi, a Second Circuit case from 2004. The number is 372 F3rd 118. And in that case, the court held that the indictment described defendants trafficking in detail and then referenced those events with the shorthand designation of narcotics trafficking. But the term narcotics trafficking unambiguously referred to the sale of a particular narcotic, given the detailed allegations in the body of the indictment. And that is, you know, that is essentially what what we're suggesting here is that the captions again do not alter the substantive allegations of the counts. And of course, if you look at the indictment, page 99 of the Joint Appendix, it actually provides six different modalities for how Rocketeering Act 8 could have been committed. Now, the first three modalities do name OS as the extortion victim. But the last three modalities, the robbery modalities, are entirely silent as to the victim. And the same is true with respect to the allegations on page 69 of the Joint Appendix. And, you know, they describe the robberies, how they unfolded, but are again agnostic as to the victim. And so, you know, it is the government's position that the jury was entitled to to convict on count, well, on counts one and three. But again, since we're speaking only of the Hobbs robbery, based on based on the robbery of Mr. Stevens's wife, Keona Holloway, the indictment, again, did not specify any particular victim. Neither did the court's final jury instructions. If there are no other questions on let me ask you just theoretically, if, if Ms. Holloway had not been at the house, would there still be a robbery? I think no, if she had been just, you know, completely absent from the house, I think that's that there would have been no robbery. She wouldn't have been in a position to prevent the taking. But of course, she was at the house. She was on, she was forced on the couch, forced to remain on the couch by the police officers from the, they were exploring the house looking for the money and drugs and other paraphernalia to steal. At some point, I will say she was kicked out of the house, you know, on pain of, on the threat of arrest, I should say. She testified that she was afraid she was going to be arrested if she didn't do exactly what the officers said. But she remained directly outside the house, parked in her car, watching the front door of the house. And so if she, of course, had not been expelled from the house, she would have, she would have been able to reach the items and, you know, and prevent their taking. She would have stayed inside and prevented any takings had she not been subjected to force threats. So, you know, again, this, this is a classic case of Hobbs Act robbery, even if we, you know, assuming as we should, that Kiana Holloway was the victim and not Mr. Stevenson, who was in custody at the time. I will, I think, use the remainder of my time to just discuss a little bit this idea of perjury. Now, as the district court found, you know, these, the alleged inconsistencies between what Warden... As I understand opposing counsel, he's just not alleging perjury, but he's alleging that the trial prosecutors suborned perjury, which is a fairly serious allegation to make. Correct, Your Honor, and I'm sorry if I misspoke. But, you know... Well, no, I mean, it's just, I think it's two things. It's the perjury of, I guess, Warden Hendricks and maybe some others, but that also the trial prosecutors aided and abetted the perjurious testimony. Correct, and, you know, as your question underscores, this is an incredibly serious charge, and frankly, there's no basis in the record to find that the prosecutors suborned perjury. And to prevail on such a claim, Mr. Taylor must demonstrate that the testimony was false, that the government knew, of course, that the testimony was false, and that there is a reasonable possibility that the false testimony could have affected the verdict. And I would submit that Mr. Taylor has failed on all three prongs of that test. I mean, the testimony wasn't false. There may have been minor inconsistencies, but, you know, according to the 302 report for Ward's proffer in April of 2017, he thought that Jenkins was saying that a person had run from the house so that he would have probable cause to get a warrant. According to the 302 report of Hendricks's May 2017 proffer, an officer called out over the radio, hey, somebody is running from the house, but Hendricks did not indicate whether he saw the person himself. And so, frankly, this is not, you know, material different from, materially different from what both Ward and Hendricks said at trial when they're on the stand. And, of course, you know, as your Honor, again, suggested by virtue of the question, there's simply no suggestion to support the very serious charge that the government knew the testimony was false and that they, you know, aided and abetted the perjury. I see that I have about three minutes left on the clock, but I'm happy to sit down, as it were, if the panel has no other questions. Wonderful. Then I will cede my remaining time, and I respectfully ask this Court to affirm. May I proceed? Thank you very much. May I proceed, Your Honor? Thank you very much, yes. Mr. Newton, you have five minutes. Thank you. I want to go back to this, the perjury. Are you looking at the prosecutors and supporting perjury? I am saying the following. I think a rational fact-finder, after an evidentiary hearing, could conclude that, all right? I did not get a hearing. This is what the record showed. The rational fact-finder could conclude what, exactly? Looking at the statements given that are quoted in my brief that are part of the record, the statements that Ward and Hendricks gave to the trial prosecutors, combined with Wayne Leo Wise's 2023 book, all of that, when you sit it, when you compare that to what Jenkins and, or to what Hendricks and Ward testified at trial about the ruse, the hoax, whether there was really somebody at the back of the house, whether there was somebody trying to break into the house, whether somebody ran away, and one or more officers, most importantly appellant Taylor, chased them, they are completely contrary. Now, whether Defense Counsel tried to cross-examine them, different issue. As I noted out, as I noted in Glossop, the Supreme Court said, it does not matter what a defense lawyer does not do. What matters is, did the trial prosecutors know these people were saying something that was not true? If you carefully look at the statements that Hendricks and Ward gave to the trial prosecutors, saying, this really happened, we really chased somebody, and combining that with Jenkins' statement that Maurice Stevens' son was on the property, both under oath, Hendricks and Ward said repeatedly, nobody was on the property, this was all completely. So the statements that are on these FBI forms, that's what you're talking about, correct? Combined with Wayne Jenkins' plea agreement signed by the two top prosecutors. So the statements were not signed by the witnesses, is that correct? Correct, your honor, but remember you've got to. And they were not made under perjury. Well, it's a 1001 violation to lie to a federal agent and to lie to a prosecutor. You've got to look at the. The 302 statements of the FBI agents are the statements of the FBI agents. They're not the statements of the witness. They're not. The witness testimony came from the jury. The witness's statements to the jury were under oath. The witness's statements to the trial prosecutors are. I'm sorry, your honor. Go ahead. The witness's statements to the trial prosecutors recounted in FBI 302 forms must be considered at this juncture to be accurate in what they said. That is the FBI agent's statement. Of what these two men said. Of what these two men said. For purposes of this procedural posture where we haven't had a hearing, you've got to look at the evidence in a light most favorable to Mr. Taylor. And that includes assuming what's in those 302 statements are true and accurate about what Hendrickson Ward told the trial prosecutors and the FBI agent prior to trial. Compare those two. They are diametrically opposed about the hoax, the ruse, the chasing the boy. Factor in also the my expert witness's report about there being absolutely no statement that she could pick up consistent with what that transcript created by the government. Read Ranham's testimony. They're yes. Again, in a light most favorable to Mr. Taylor, I have made out a sufficiently colorable perjury claim. This is the reason we have hearings. Let the prosecutors have a chance to explain. We've never had that opportunity. There is a colorable claim. Title to release because you made out a perjury claim or a severed nation of perjury claim. Well, the way the Supreme Court refers to it as a prosecutor either elicits it or fails to correct it. Same difference. And it can be misleading or an outright lie. Same difference. I am entitled to a hearing at which the two trial prosecutors may testify in which I may question also Hendricks and I may question Ranham and I may question Ward about the evolution of their test of their statements from the ones recounted in 302s. If they want to call the FBI agents and say, oh no, this was all a mistake. Fine. I've never had a chance to do any of this. All I'm asking for is a hearing on this very important claim. The only the only request you're making today is for remand for a hearing. Is that correct? That is absolutely correct. I just want to hear him because I believe I've made out a colorful claim. I'm out of time. Thank you. Thank you, Mr. Newton. And we, Judge Agee mentioned, we know you're court-appointed and we appreciate your work. And we'll take the matter under advisement. We also appreciate Madam Prosecutor, your work on this matter. We'll take it under advisement. And if we were in and greet you personally, but we're not there, we'll get next time we'll be able to do that. And that being said, I'd like to take a brief break if my colleagues will approve that. I agree. We got a majority. I certainly agree too. Okay. This honorable court will take a brief recess. Thank you, Madam Clerk. I'll place the attorneys in the waiting room. Thank you.
judges: Robert B. King, G. Steven Agee, Toby J. Heytens